NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SNOW AND ICE MANAGEMENT CO. OF PA, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRYKO PARTNERS, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 21-16233 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants Tryko Partners, LLC ("Tryko") and Marquis Health Services, LLC's ("Marquis," and together with Tryko, "Defendants") Motion to Dismiss the Complaint. (ECF No. 4.) Plaintiff Snow and Ice Management Company of PA, Inc. ("Snow Management") opposed (ECF No. 7), and Defendants replied (ECF No. 8). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies Defendants' Motion.

I.  **BACKGROUND**

This is a case about a snow removal company that alleges it was stiffed on the bill after a busy season. Snow Management, a Pennsylvania corporation, is in the business of removing snow and ice from commercial properties in the tri-state area. (Compl. ¶ 10, ECF No. 1.) Snow Management completed numerous snow removal contracts for commercial parking lots and walkways in the winter of 2020. (*Id.* ¶ 17.) Relevant to this lawsuit, Snow Management contends that it performed services for thirteen small businesses—nursing homes and apartment

complexes—that it believed to be "owned, managed, and/or operated" by Defendants. (Compl. ¶¶ 12-13.) That's because on all the contracts or related addendums (less three), the same individual, Yitzchok Rokowsky ("Rokowsky"), signed on behalf of the smaller businesses. (*See* Compl. Ex. A, ECF No. 1-2.) Rokowsky is a representative of Tryko. (*See* Pl.'s Resp. to Order to Show Cause 3-4 ("OTSC Resp."), ECF No. 15.) And the contracts Rokowsky did not sign were each signed by a Marquis representative. (*See, e.g.*, Compl. Ex. A, at *26 (proposal to "Marquis Health Services," signed by Laura Graham).)[1] Adding to the corporate complexity, Marquis is a subsidiary of Tryko and was registered by Rokowsky. (OTSC Resp. Ex. C, ECF No. 15-4; *see also* Pl.'s Resp. Br. Ex. C, ECF No. 7-3.)

Snow Management executed the contracts before performing services. Many of the contracts or addendums included the job description, property address, and scattered references to Tryko and Marquis. (*See* Compl. Ex. A.) Snow Management alleges that Defendants agreed to a nearly three-year service contract starting in November 2020 and ending in April 2023. (Compl. ¶ 10.) But the warm relationship between Snow Management and the property owners chilled after the 2020 season ended. (*See id.* ¶¶ 11, 17.) That's because Snow Management alleges that Defendants chose to breach each contract and withhold payment to Snow Management for services rendered. (*Id.*) If you ask Snow Management, Defendants and Rokowsky took the "sue me" approach rather than paying their bills. (*See id.* ¶ 17.) So, that's precisely what Snow Management did. (*See generally* Compl.) It filed a federal suit against Tryko and Marquis asserting breach of contract, account stated, and in the alternative, unjust enrichment and promissory estoppel claims,

---

[1] Page numbers preceded by an asterisk refer to the page number atop the ECF header.

asking for $324,024.67 in damages.[2] (*See generally* Compl.) Snow Management chose not to name any of the thirteen individual small companies as defendants, instead going after the two companies it alleges it contracted with for services on behalf of the thirteen businesses—Tryko and Marquis. (*E.g.*, *id.* ¶ 10, 12-13.)

Defendants took issue with the lawsuit's propriety and moved to dismiss for lack of diversity jurisdiction under Federal Rule of Civil Procedure 12(b)(1)[3] and failure to state a claim under Rule 12(b)(6), claiming that they are not the proper defendants. (*See* Defs.' Moving Br. 9, 11, ECF No. 4-2.) Put differently, Defendants contend that Snow Management intentionally sued them instead of the thirteen smaller businesses for which Snow Management performed services, solely to proceed in federal court. (*See id.* at 4.) What's more, Defendants claim that they bear no relation to the contracting businesses and, further, that Snow Management failed to correctly identify Defendants' citizenship, which is necessary to establish diversity jurisdiction. (*See id.* at 3, 11.) Defendants aver that they do not own or operate any of the thirteen entities that Snow Management provided services for and that each contract was independently signed on behalf of the separate entities. (*Id.* at 3-4.) Further, they deny contracting with Snow Management in any capacity. (*Id.*) Defendants contend that there is no "parent company" theory of liability entitling Snow Management to compensation and, thus, Snow Management cannot "lump" invoices to meet the $75,000 threshold required for federal diversity jurisdiction. (*Id.* at 4, 12.) Snow Management opposed dismissal, and Defendants replied.

---

[2] Snow Management claims that Tryko owes it $214,701.14 and Marquis owes it $109,323.53. (*Id.* ¶¶ 25, 33.)

[3] Hereafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

In light of Defendants' attack on the Court's jurisdiction, the Court ordered Snow Management to show cause as to why the Court retains diversity jurisdiction. (Order to Show Cause ("OTSC"), ECF No. 14.) Alternatively, the Court ordered Snow Management to demonstrate "what diligence it conducted as part of its inquiry." (*Id.*) Snow Management submitted supplemental briefing (ECF No. 15) and Defendants replied (ECF No. 17).[4] Now before the Court is Defendants' motion to dismiss.

## II.   LEGAL STANDARD

Defendants move to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first, because if it must dismiss the complaint for lack of subject-matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, No. 12-3922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)).

### A.   12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Federal district courts retain original jurisdiction over civil actions between "citizens of different States" where the matter in controversy "exceeds the sum or value of $75,000." 28 U.S.C. § 1332. Essentially, this statute has been interpreted to mean that "no plaintiff [may] be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). The general rule is that "citizenship of the parties is to be determined with reference to the facts as they existed at the time of filing." *Grupo Dataflux v. Atlas Glob. Grp.,*

---

[4] Bafflingly, Defendants claim that Snow Management's response to the Court's Order to Show Cause was an impermissible "sur-reply." (Defs.' Suppl. Reply Br. 1-2, ECF No. 17-1.) The Court ordered Snow Management to respond to its Order to Show Cause and that is precisely what Snow Management did.

4

*L.P.*, 541 U.S. 567, 569-70 (2004). For diversity jurisdiction, the party asserting jurisdiction carries the burden of establishing diversity of citizenship. *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (citations omitted).

At any time, a defendant may move to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1), (h)(3). The Court may treat a party's motion as either a facial or factual challenge to the court's jurisdiction. *Dickerson*, 2013 WL 1163483, at *1. Typically, "[a] motion to dismiss . . . for lack of subject matter jurisdiction made prior to the filing of the defendant's answer is a facial challenge to the complaint." *Bennett v. Atl. City*, 288 F. Supp. 2d 675, 678 (D.N.J. 2003) (citations omitted). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). As such, district courts "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). If the Complaint survives a facial challenge and the defendant then mounts a factual challenge, "the plaintiff is entitled to limited discovery for the purpose of establishing that complete diversity exists." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 102 (3d Cir. 2015).

### B.    12(b)(6) Motion to Dismiss for Failure to State a Claim

In deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v.*

*Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's claim must be facially plausible to survive dismissal, such that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III.  DISCUSSION

Defendants raise two arguments in support of dismissal of the Complaint: that Snow Management fails to (1) adequately plead diversity jurisdiction and (2) state a claim. The Court begins with whether jurisdiction has been sufficiently pled, as it must, and then addresses Defendants' remaining arguments. *Dickerson*, 2013 WL 1163483, at *1 (noting that district courts must first address jurisdictional challenges).

#### A.  Subject-Matter Jurisdiction

An unincorporated business' citizenship is not determined by its principal place of business or state of incorporation. *See Wood*, 592 F.3d at 420. Instead, unincorporated businesses assume the citizenship of their members or partners. *Id.* In the case of limited liability companies ("LLCs"), citizenship is solely "determined by the citizenship of its members." *Lincoln Benefit*, 800 F.3d at 103 (citing *Wood*, 592 F.3d at 420). "[W]here an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the LLC." *Wood*, 592 F.3d at 420 (citing *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003)) (internal quotations omitted).

6

But "a rule requiring the citizenship of each member of each LLC to be alleged affirmatively *before* jurisdictional discovery would effectively shield many LLCs from being sued in federal court without their consent." *Lincoln Benefit*, 800 F.3d at 108-9. Therefore, "a plaintiff may allege that the defendant is *not* a citizen of the plaintiff's state of citizenship." *Id.* at 107.

Defendants moved for dismissal before the Court, claiming in part that Snow Management misstated its LLC's members' citizenships. (*See, e.g.*, Cert. of Yitzchok Rokowsky ("Rokowsky Cert.") ¶ 3, ECF No. 4-5.) Armed with *Lincoln Benefit*, the Court ordered Snow Management to use the resources at its disposal to reasonably ascertain, in good faith, Defendants' citizenship. (OTSC 2 (citing *Lincoln Benefit*, 800 F.3d at 102).) So that is what Snow Management did, and during its search it did not discover any information about Defendants that defeats diversity.[5] (*See* OTSC Resp.) For its part, Defendants did nothing to assist in establishing whether they are in fact diverse from Snow Management, even though they are "in the best position to ascertain [their] own membership."[6] *Lincoln Benefit*, 800 F.3d at 108. Rather, Defendants continue to state that they were not parties to the contracts at hand and, thus, that Snow Management cannot lump invoices together to meet the $75,000 threshold requirement of diversity jurisdiction. (*E.g.*, Defs.' Suppl. Reply Br. 9.) Further, and in alignment with their previous arguments, Defendants allege

---

[5] Snow Management provided documents filed with the New Jersey Department of Treasury, Division of Revenue, identifying Rokowsky and Yonah Kohn ("Kohn")—both residents of New Jersey—as Tryko's "members/managers." (*See* OTSC Resp.; OTSC Resp. Ex. A, ECF No. 15-2.) These documents identify Marquis's members as Rokowsky and Tryko Holdings, LLC. (OTSC Resp. 4; OTSC Resp. Ex. B, ECF No. 15-3.) Snow Management also provided its findings from an online business search, listing Defendants' connected businesses and known members, all of whom are citizens of New Jersey. (OTSC Resp. Ex. C.)

[6] Instead, Defendants continue to state that Snow Management failed to accurately determine Defendants' membership structure. (Defs.' Suppl. Reply Br. 8.) They clarify that Tryko is owned by Tryko Holdings, LLC, and RKK Holdings, LLC, both of which are owned by other entities. (*Id.*) However, Defendants have decided not to inform this Court as to the identities of these other entities, nor did they provide Marquis's membership structure. (*See id.*)

that because there are thirteen different contracts with thirteen separate entities, diversity is destroyed by one of those entities being incorporated in Pennsylvania. (*Id.* at 7.)

But Defendants miss the mark on their Rule 12(b)(1) argument. They lump together and fail to distinguish the Court's jurisdiction with the merits of the suit. Snow Management alleges in its Complaint that Defendants were the contracting parties. (Compl. ¶¶ 11-13.) As to whether Snow Management and Defendants had a contractual relationship, that is a merits determination in which the Court must construe the allegations in the Complaint as true. *Hartig*, 836 F.3d at 268 (quoting *Petruska*, 462 F.3d at 302 n.3) (internal quotations omitted). To be sure, Defendants challenge that notion, but they separately argue that this Court lacks jurisdiction because they were not the contracting parties. This circular logic puts the cart before the horse. Should Defendants prevail in showing they are not the correct parties to sue, they would then prevail on showing that Snow Management failed to state a claim—a Rule12(b)(6) argument. In contrast, to prevail on a Rule 12(b)(1) challenge, Defendants must show that they are not diverse from Snow Management. As to this fact, Defendants remain silent other than proffering conclusory statements that Snow Management misstated Defendants' citizenship. (*See generally* Defs.' Suppl. Reply Br.)

After initial and subsequent briefing, and after reviewing the pleadings in a light most favorable to Plaintiff, the Court has enough information to support Snow Management's good faith assertion that Defendants were the contracting parties, at least for the purposes of assessing jurisdiction. (*See* Compl. Ex. A.) Further, Snow Management's response to the Court's Order to Show Cause reflects that Snow Management used reasonable diligence in attempting to ascertain Defendants' membership structure. (*See generally* OTSC Resp.) Doing so has reaffirmed that, at this stage and to the Court's knowledge, Snow Management remains the only Pennsylvania citizen in this suit. As such, the Court finds that Snow Management pleads diversity jurisdiction in good

faith and sufficiently alleges that Defendants' members are not citizens of Pennsylvania.[7] Nothing more is required at this juncture as far as pleading diversity.[8] *Lincoln Benefit*, 800 F.3d at 111.

## B. Failure to State a Claim

With the jurisdictional issue put to rest at the pleadings stage, the Court pushes forward to Defendants' failure-to-state-a-claim argument. (*See* Defs.' Moving Br. 8-11.) To support this argument, Defendants aver that they never contracted with Snow Management for any snow removal services and that their names do not appear on the contracts. (*Id.*) Thus, Defendants allege that because they are not the contracting parties, Snow Management has failed to state a claim against them upon which relief may be granted. (*Id.*) Snow Management rebuts this argument by arguing that Tryko and Marquis appear on the contract addendums and site maps, and that Defendants held themselves out as the contracting parties. (*See* Pl.'s Statement of Material Facts in Opp'n ¶ 10, ECF No. 6; Pl.'s Opp'n Br. 4-5, ECF No. 7.)

---

[7] The information provided by Snow Management indicates that: (1) most of Defendants' members are citizens of New Jersey; (2) counsel for Snow Management conducted a reasonable and good-faith inquiry into the membership structure of Defendants but came up short of identifying each and every member up the chain; (3) for the members that Snow Management could not determine membership, there is good reason to believe they have close ties to New Jersey; and (4) counsel for Snow Management found no meaningful connection between Defendants and Pennsylvania. (*See* OTSC Resp.) It is on these bases that Snow Management surmises that none of Defendants' members are citizens of Pennsylvania. (*Id.*)

[8] Defendants assert that because they chose to attach two declarations to their motion to dismiss, that choice transformed what would be a motion on the pleadings into one for summary judgment. (Defs.' Moving Br. 6 (citing Fed. R. Civ. P. 12(d)).) But Defendants overlooked the federal rules' explicit language that the Court needs to *accept* their extraneous information on a motion to dismiss and, importantly, all parties must be heard on the matters outside the pleadings. Fed. R. Civ. P. 12(d). In any event, Defendants' self-serving certifications do not suggest that their members are citizens of Pennsylvania to defeat diversity jurisdiction. (*See* Rokowsky Cert. ¶ 3.) At most, Defendants vaguely state that the Complaint misstated their citizenship, which the Court addressed in its Order to Show Cause and resolved above. (*Id.*) The certifications then go on to raise factual assertions that Defendants "never entered into" contracts with Snow Management and confirm that Defendants have no ownership of the thirteen small businesses. (*Id.* ¶ 5) These factual assertions are premature on a motion on the pleadings.

Under New Jersey law, a plaintiff in a breach of contract cause of action must show "(1) a contract [existed] between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Doe v. Bank of Am., N.A.*, No. 16-3075, 2018 WL 295565, at *5 (D.N.J. Jan. 3, 2018) (citing *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (alteration in original)). Here, Defendants primarily take issue with the first prong, the existence of a valid and enforceable contract between the parties.

"A valid 'contract arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Hills v. Bank of Am.*, No. 13-4960, 2014 WL 4113131, at *4 (D.N.J. June 30, 2014) (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992)). "Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Weichert Co. Realtors*, 608 A.2d at 284. And "[e]ssential terms are those that the parties would reasonably regard as vitally important elements of their bargain, an inquiry that depends primarily on the intent of the parties." *Petronzi v. Comput. Scis. Corp.*, No. 15-3593, 2018 WL 1586325, at *32 (D.N.J. Apr. 2, 2018) (citation omitted).

With the standard set, Defendants offer a few arguments in support of dismissal. *First*, they vigorously assert that their names do not appear on the contracts in question. (*See* Defs.' Moving Br. 5, 9; Defs.' Suppl. Reply Br. 8.) *Second*, they contend that Snow Management offers no facts to show Defendants "are the owners or operators" of any of the thirteen companies. (Defs.' Moving Br. 9-10.) *Finally*, Defendants raise the New Jersey Statute of Frauds defense to assert that they cannot be liable for the thirteen companies' liabilities unless they agreed to do so in writing. (*Id.* at 10-11.) Grouping these three arguments together, Defendants stress that they are not liable for the alleged contractual breach that Snow Management centers its suit on. (*See generally id.*) For

its part, Snow Management counters that Defendants (1) held themselves out as the contracting parties (Pl.'s Opp'n Br. 4), (2) appeared throughout the attached addendums to the contract (*Id.* at 4-6), (3) used their email addresses as points of contacts within the contract (*Id.*), and (4) cannot rely on the Statute of Frauds defense because that statute is inapplicable here (*Id.* at 13-14).

The Court finds that Defendants have failed to prove "that no claim has been presented." *Hedges*, 404 F.3d at 750 (citing *Kehr*, 926 F.2d at 1409). Tackling first Defendants' assertion that they do not appear on the contracts themselves (Defs.' Moving Br. 5, 9), the Court finds that argument slices the cake too thin. What Defendants fail to mention is that the documents Defendants consider to be the "true" contracts refer extensively to the attached schedules and addendums to provide the material items. (*See* Compl. Ex. A.) Could the Court then consider the addendums in addition to the contracts? Yes, it can. It is settled law that if the addendums fill in material terms omitted by the contract, then they must be considered as part of the contractual agreement as a whole. *See DL Res., Inc. v. FirstEnergy Sols. Corp.*, 506 F.3d 209, 219 (3d Cir. 2007) (finding that an addendum was to be read "in the context of the contract as a whole" because certain essential terms were only listed in the addendum); *RQAW Corp. v. Dearborn Cnty*, 83 N.E.3d 745, 753 (Ind. Ct. App. 2017) (stating that a contract that proposed to list essential terms in an addendum, but failed to do so, was unenforceable due to the lack of essential terms). Here, the contracts are only a few pages long and omit several essential terms, such as services to be provided and their subsequent costs. (*See* Compl. Ex. A ("Cost. See Addendum A").) Therefore, the contracts reflect that the agreed-on services and costs are to be listed on "Schedule A" or "Addendum A," referencing the addendums to each contract. (*Id.*)

With a green light for the Court to consider the attachments to the contracts, it becomes impossible to miss the unequivocal references to Defendants. No doubt exists that Defendants'

corporate names are sprinkled throughout each contract or attached addendum in various ways. For example, the exhibits attached to Snow Management's Complaint reflect that the point of contact for each job contained an "@tryko.com" or "@mhslp.com" email address, the "site maps" for eleven of the thirteen properties contain the name "Tryko Partners" or "Marquis," and each addendum to the contract was signed by one of Defendants' representatives. (*See* Compl. Ex. A, at *4 ("Contractor agrees to contact the Owner's property manager if . . . [the job] cannot be completely plowed . . . Contractor may contact Shawn Leeds at SLeeds@tryko.com."), at *6 (Snow Management's proposal submitted to "Tryko Partners" and describing Philadelphia Village as the "Job Name"), at *49 ("Snow Removal Proposal/Contract" submitted to "Marquis Health Services").) As shown in the contract addendums, Defendants' names and contact information appear on invoices, bill proposals, and job site maps.[9] (*See id.*, at *8 ("Site Map – *Tryko Partners* Philadelphia Village" (emphasis added)); *see also* Pl.'s Opp'n Br. Ex. B, ECF No. 7-2.) Defendants' representatives signed the contract addendums listing services to be performed and their costs. (*See* Compl. Ex. A.) The Court agrees that an employee can work for more than one company, making this factor far from dispositive. But because Defendants' representatives used their Tryko and Marquis accounts and contact information throughout the addendums, Defendants' argument that these representatives were not acting on their behalf is unpersuasive on a motion to dismiss. (*See, e.g.*, Defs.' Reply Br. 5-6.) The Court also takes as true on a motion to dismiss Snow Management's assertion that "[Defendants] held themselves out as the business entities responsible for cost of the snow and ice removal services performed by [Snow Management]." (Pl.'s Statement of Material Facts in Opp'n ¶ 10.) It remains plausible that Snow Management

---

[9] The Court may consider "exhibits attached to the [C]omplaint" on a motion to dismiss. *Hartig*, 836 F.3d at 268.

reasonably believed the thirteen entities were simply the "[j]ob [n]ame[s]." (*See* Compl. Ex. A, at *6.)

Relatedly, in construing the Complaint and attached exhibits in a light most favorable to Snow Management, the Court finds support for Snow Management's theory that it contracted with (or reasonably believed to have contracted with) Defendants for snow removal services, that Defendants failed to compensate Snow Management for the completed services, and that Snow Management is entitled to relief. *Phillips*, 515 F.3d at 233 (quoting *Pinker*, 292 F.3d at 374 n.7). Considering the ambiguities discussed above regarding mixed refences to the thirteen entities and Defendants throughout the addendums, Defendants' "they-knew-who-they-were-contracting-with" argument is ripe for a factual determination at a later stage. That is, the Court cannot say as a matter of law that Defendants were not the contracting parties. *Phillips*, 515 F.3d at 231 (noting that dismissal is warranted only if the plaintiff is not entitled to relief under any reasonable reading of the complaint). In addition, Defendants miss the mark in arguing that Snow Management would have to prove that Defendants owned the thirteen smaller businesses to "establish a parent corporate relationship." (Defs.' Reply Br. 5.) Ownership is not the test. Rather, Snow Management could prevail if it demonstrates that it contracted with Defendants irrespective of which entity literally owned the property. *Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019) (reiterating that the first element of a breach of contract claim is whether the parties entered into a contract containing certain terms). At least at the motion to dismiss stage, Defendants fail to prove no material factual dispute exists. Therefore, dismissal is unwarranted.

Finally, the Court finds that the Statute of Frauds does not insulate Defendants at the pleadings stage. *See* N.J. Stat. Ann. § 25:1-5 (West). For starters, Snow Management alleges that Defendants directly signed the contracts, not that they undertook to commit to a loan for a separate

company. (*See generally* Compl.) The Statute of Frauds does not apply to standard services contracts (like snow removal) that do not invoke any other provision of § 25:1-5. *Sutton v. Lienau*, 542 A.2d 473, 477 (N.J. Super. Ct. App. Div. 1988) (finding that an agent with proper authorization can furnish a writing that will bind the company and satisfy the Statute of Frauds). In any event, Defendants signed the contracts and appear on the addendums, satisfying the Statute of Frauds, should it apply. *Id.* ("[I]t is not 'necessary that all the terms of the contract be agreed to at one time, nor written down at one time, nor on one piece of paper.'") (quoting *Charlton v. Columbia Real Est. Co.*, 60 A. 192, 194 (N.J. 1905)). Because the Court already rejected Defendants' argument that the thirteen smaller companies are the true contracting parties, this argument about needing a memorialization of Defendants' clear written intent to assume the smaller businesses' liabilities withers away, too.

As such, Defendants have failed to meet their burden of "showing that no claim has been presented," and the Court therefore denies Defendants' Motion to Dismiss under Rule 12(b)(6).[10]

## IV.  CONCLUSION

Considering all facts in a light most favorable to Snow Management, the Court denies Defendants' Motion to Dismiss. An Order consistent with this Memorandum Opinion will follow.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[10] Although it is settled law that a party cannot plead an unjust enrichment claim along with a breach of contract claim, that only holds true where the parties do not dispute the validity of the contract at issue. *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014). Because Defendants strenuously deny that they contracted with Snow Management, this "either/or" legal principle does not apply at this juncture. Additionally, Defendants do not challenge the account stated claims (Counts Three and Four) separately from the breach of contract claims and, therefore, the Court declines to consider this argument independently for dismissal. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (noting that the burden is on the moving party to demonstrate that no claim has been presented).